IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15–2179

**Mary DiFederico, et al.,**

*Plaintiffs-Appellants,*

v.

**Marriott International, Inc.,**

*Defendant-Appellee.*

On Appeal from the September 18, 2015 Order of the United States
District Court for the District of Maryland Granting Summary
Judgment in Favor of Defendant

**Redacted Brief of Appellee**

Paul K. Leary, Jr.
COZEN O'CONNOR
1627 I Street, N.W., Suite 1100
Washington, DC 20006-4007
Telephone: (202) 912-4800
Facsimile: (202) 912-4830
pleary@cozen.com
*Counsel for Defendant-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  15-2179          Caption:  DiFederico v. Marriott International, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Marriott International, Inc.
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Paul K. Leary, Jr.                    Date:        2/22/16

Counsel for: Appellee, Marriott International, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Andrew C. Hall, Esquire
Matthew P. Leto, Esquire
Hall Lamb and Hall, PA
2665 S. Bayshore Drive
Penthouse One
Miami, FL 33133

Jonathan A. Azrael, Esquire
Azrael Franz Schwab & Lipowitz, LLC
101 E. Chesapeake Avenue, 5th Floor
Towson, MD 21286

/s/ Paul K. Leary, Jr.
(signature)

2/22/16
(date)

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................. 1

STATEMENT OF THE ISSUE .............................................. 5

STATEMENT OF THE CASE .............................................. 5

I.  The September 20, 2008 Terrorist Attack................................... 5

II. Procedural History......................................................... 6

    A.  The Plaintiffs' Theory of Liability ........................................ 6

    B.  The Second Amended Complaint ........................................ 8

    C.  The Third Amended Complaint............................................ 9

    D.  The Summary Judgment Proceedings and the District
        Court's Decision .................................................. 11

    E.  The Factual Record............................................. 13

        1.  The Franchisor-Franchisee Relationship. .............. 13

        2.  The Hotel's Security Operations ............................. 15

        6.  Statements by Alan Orlob ........................................ 27

SUMMARY OF ARGUMENT .............................................. 34

STANDARD OF REVIEW .................................................. 35

i

ARGUMENT ........................................................................ 36

I.  Summary judgment was properly granted on all counts because no reasonable fact-finder could conclude that Marriott committed a specific negligent act that caused Mr. DiFederico's death ................................................................................ 36

    A.  Marriott owed no duty to Mr. DiFederico ......................... 38

    B.  Marriott did not commit a negligent act that caused Mr. DiFederico's death ............................................................. 47

II.  Summary judgment was properly granted on the survivorship claim for the additional reason that there is no evidence that Mr. DiFrederico suffered any pain ............................................. 49

III.  Summary judgment was properly granted on the plaintiffs' vicarious liability "claim" ............................................................ 51

CONCLUSION ..................................................................... 52

CERTIFICATE OF COMPLIANCE ..................................................... 53

CERTIFICATE OF FILING AND SERVICE ..................................... 54

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Choice Hotels Int'l,*
  942 So. 2d 817 (Miss. Ct. App. 2006) ............................................................... 40, 42

*Allen v. Choice Hotels Int'l, Inc.,*
  276 F. App'x 339 (4th Cir. 2008) ...................................................................... 42, 43

*Anderson v. Turton Dev., Inc.,*
  483 S.E.2d 597 (Ga. Ct. App. 1997) ...................................................................... 39

*B.P. Oil Corp. v. Mabe,*
  370 A.2d 554 (Md. 1977) ............................................................................... 39, 40

*Bartholomew v. Burger King Corp.,*
  No. 11-00613, 2014 WL 1414975 (D. Haw. Apr. 14, 2014) ................................... 43

*Case v. Holiday Inns, Inc.,*
  851 F.2d 356, 1988 WL 70401 (4th Cir. 1988) ...................................................... 39

*Castro v. Brown's Chicken and Pasta, Inc.,*
  732 N.E.2d 37 .................................................................................................... 40

*Chelkova v. Southland Corp.,*
  771 N.E.2d 1100 (Ill App. Ct. 2002) ...................................................................... 39

*Chevron, U.S.A., Inc. v. Lesch,*
  570 A.2d 840 (Md. 1990) ...................................................................................... 39

*Choice Hotels Int'l v. Palm-Aire Oceanside,*
  No. 95-2592, 1996 WL 494063 (4th Cir. Aug. 30, 1996) ....................................... 38

*DiFederico v. Marriott Int'l, Inc.,*
  714 F.3d 796 (4th Cir. 2013) ............................................................................... 2, 8

*DRD Pool Service, Inc. v. Freed,*
  5 A.3d 45 (Md. 2010) ...................................................................................... 37, 50

*Fitz v. Days Inns Worldwide, Inc.,*
  147 S.W.3d 467 (Tex. App. 2004) .......................................................................... 40

iii

*Hart v. Marriott Int'l, Inc.,*
  758 N.Y.S.2d 435 (App. Div. 2003) ......................................................... 40

*Hurley v. United States,*
  923 F.2d 1091 (4th Cir. 1991) ................................................................. 49

*Jones v. Flood,*
  702 A.2d 440 (Md. Ct. Spec. App. 1997) ................................................. 50

*May v. Giant Food, Inc.,*
  712 A.2d 166 (Md. Ct. Spec. App. 1998) ................................................. 37

*McCullough v. Liberty Heights Health & Rehab. Ctr.,*
  830 F. Supp. 2d 94 (D. Md. 2011) ........................................................... 51

*Osunde v. Lewis,*
  281 F.R.D. 250 (D. Md. 2012) ............................................................ 47, 48

*Rogers v. Deane,*
  594 F. App'x 768 (4th Cir. 2014) ............................................................. 36

*Schear v. Motel Mgmt. Corp. of Am.,*
  487 A.2d 1240 (Md. Ct. Spec. App. 1985) .............................................. 38

*Temple v. McDonald's Corp.,*
  No. 11-7516, 2012 WL 848284 .......................................................... 40, 45

*Thompson v. Potomac Elec. Power Co.,*
  312 F.3d 645 (4th Cir.2002) .................................................................... 36

*Toppel v. Marriott Int'l, Inc.,*
  No. 03-civ-3042, 2008 WL 2854302 (S.D.N.Y. July 22, 2008) ................ 44

*Tri-State Poultry Co-op. v. Carey,*
  57 A.2d 812 (Md. 1948) ...................................................................... 37, 50

*Triplett v. Soleil Grp., Inc.,*
  664 F. Supp. 2d 645 (D.S.C. 2009) .......................................................... 39

*Washington Metro. Area Transit Auth. v. Reading,*
  674 A.2d 44 (Md. 1996) ........................................................................... 49

*Weimer v. Hetrick,*
  525 A.2d 643 (Md. 1987) ......................................................................... 37

*Wu v. Dunkin' Donuts, Inc.,*
  105 F. Supp.2d 83 (E.D.N.Y. 2000) ......................................................... 39

iv

## INTRODUCTION

The plaintiffs/appellants are relatives of Albert DiFederico, an American government contractor who was tragically murdered in a terrorist attack at the Islamabad Marriott Hotel in Islamabad, Pakistan on September 20, 2008.  It is undisputed that defendant/appellee Marriott International, Inc. ("Marriott") had nothing to do with the terrorist attack.  What is equally undisputed—and key to this appeal— is that Marriott did not own, operate, or manage the franchised Islamabad Marriott Hotel.  Rather, the hotel was owned, operated, and managed by an independent franchisee known as Hashwani Hotels Limited, a Pakistani company.

From the outset of this case, the plaintiffs' theory has been that Marriott employees sitting at Marriott's headquarters in Bethesda, Maryland, created a security plan for the Islamabad Marriott Hotel (the "Hotel"), and that the plan's alleged inadequacies, adhered to by the local security personnel in Pakistan, were the cause of Mr. DiFederico's death.  It was this specific allegation that plaintiffs relied on successfully to overcome a *forum non conveniens* challenge earlier in this case.  Reversing the district court's dismissal on *forum non*

*conveniens* grounds, this Court found the plaintiffs' Maryland-based argument "persuasive," explaining: "[B]ecause the DiFedericos' central theory revolves around Marriott's coordination of security from its principal place of business, there is inherent convenience to bringing this case to its legal backyard." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013).

In addition to their security-plan theory, the plaintiffs also contended that Marriott had trained the security staff employed by the franchisee at the Hotel, and that the alleged training had been inadequate. (J.A. 203.)

Discovery proved these theories wrong. Consistent with the fact that the Hotel is owned, operated, managed, and controlled by a separate and independent entity, Marriott did not design, create or implement a security plan for the Hotel, nor did Marriott employ, direct, or train the Hotel's security staff. Indeed, as far as the secondary argument on training is concerned, plaintiffs have barely even pursued it in their appellate papers, as there is not a shred of evidence that Marriott hired or trained any of the security staff who heroically responded to the terrorist attack.

2

Far from exercising any control over the Hotel's security operations or training procedures, Marriott's protocol for all franchised hotels, including the Islamabad Marriott Hotel, requires that each franchisee establish *its own* written comprehensive security plan. That is exactly what the franchisee did here. Although the plaintiffs continue to insist that a certain Marriott-created security plan for *Marriott-managed* hotels was also the security plan that governed the Hotel's operations, that security plan *expressly states that it does not apply to franchisees.* ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████

The tragic murder of Mr. DiFederico was caused by terrorists who blew up a truck bomb in a foreign country. The attack and its aftermath were not caused by or facilitated by a plan created by Marriott, or by anything else that Marriott did or did not do. The Hotel's owner had a security plan in place and had put in place many

3

security measures.  Those measures saved thousands of lives. ▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiffs have not presented one

shred of evidence suggesting that the Hotel's security measures in place

that night—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓—were the result of any plan created by Marriott for the Hotel's

owner.  Moreover, plaintiffs have not offered any evidence that the

heroic actions of the security guards who responded that night, and who

all perished, were in any way dictated by a plan created by Marriott.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Hotel's staff acted that evening

in accordance with security measures and protocols created by the

Hotel's local security team.  Those procedures resulted in 98% of the

people at the Hotel surviving the worst terrorist attack in Pakistani

history.  The district court acted properly in granting summary

judgment in Marriott's favor, and its decision should be affirmed.

4

## STATEMENT OF THE ISSUE

Did the district court properly grant summary judgment in
Marriott's favor on the plaintiffs' claims, when those claims were based
on the theory that Marriott committed a negligent act that caused Mr.
DiFederico's death in a terrorist attack at a hotel owned, operated, and
managed by a franchisee entirely separate from Marriott, and when
Marriott exercised no control over that franchisee's security operations?

(Suggested answer: Yes.)

## STATEMENT OF THE CASE

### I.   The September 20, 2008 Terrorist Attack

This case arises from a terrorist attack in Islamabad, Pakistan on
September 20, 2008. The attack, known as Pakistan's "9/11," was
intended to kill all occupants at the Islamabad Marriott Hotel. (J.A.
200.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



The vast majority of the people in the Hotel during the bombing survived. Albert DiFederico, an American, was one of the fifty-six fatalities.

## II.  Procedural History.

### A.    The Plaintiffs' Theory of Liability

Plaintiffs sued Marriott on June 2, 2011 and filed an amended complaint shortly thereafter. (J.A. 3.) On September 19, 2011, Marriott filed a motion to dismiss for *forum non conveniens*, arguing that this case belonged in Pakistan. (J.A. 4.) The motion and

6

supporting affidavits made clear that Marriott did not own, operate, or

manage the Hotel, nor did it hire, train, or oversee security employees

at the Hotel.  In response to Marriott's motion, the plaintiffs insisted

that their case did *not* belong in Pakistan because the case would be

limited to the issue of whether Mr. DiFederico's death could be

attributed to a purported plan created by Marriott in Maryland.  (J.A.

279:6-12, 280:15-18.)

After the district court granted Marriott's motion and dismissed

the case on *forum non conveniens* grounds, the plaintiffs appealed,

reiterating their extremely narrow theory of liability.  They argued that

the "material question[s]" to be answered by a jury in this case were

"[w]hether the security plan developed and implemented by Marriott in

Maryland was adequate to protect guests in the aftermath of the

attack" and "whether the security procedures developed by Marriott and

required for implementation by its franchisees were adequate." (J.A.

283–84.)

This Court found plaintiffs' Maryland-based argument

"persuasive," explaining: "[B]ecause the DiFedericos' central theory

revolves around Marriott's coordination of security from its principal

7

place of business, there is inherent convenience to bringing this case to
its legal backyard." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807
(4th Cir. 2013). This Court accordingly held that the case could proceed
in the District of Maryland.

## B.    The Second Amended Complaint

Plaintiffs then filed a second amended complaint alleging three
causes of action against Marriott: wrongful death, survivorship, and
vicarious liability. (J.A. 6.) Plaintiffs again alleged that Marriott was
negligent in developing and implementing an anti-terrorism security
plan for the Hotel and in providing training to Hotel security. (Second
Am. Compl, ECF Doc. 57, at ¶¶ 23-24, 34, 40.a, d.)

Marriott filed a motion to dismiss for failure to state a claim,
arguing that it did not create any security plan for the Hotel or
coordinate any security at the Hotel. (J.A. 7.) In response, plaintiffs
conceded that if the evidence adduced in discovery showed Marriott ***did
not*** exercise control over Hotel security, then they would "surely be
hard pressed to prove liability." (Pls.' Opposition to Def.'s Mot. to
Dismiss, ECF Doc. 70, at 8-9.)

8

That is precisely what discovery ultimately demonstrated. There is no evidence attributing Mr. DiFederico's death to the actions of Marriott personnel in Maryland (or elsewhere). There is no evidence that Marriott provided a local crisis management plan, provided training, or provided any level of day-to-day oversight over the actions of the security personnel in Islamabad who responded to the September 20, 2008 terrorist attack. Indeed, plaintiffs did not elicit testimony from anyone at the Hotel or from any survivors of the attack suggesting that the security measures in place that evening were designed, created, or implemented by Marriott. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## C.    The Third Amended Complaint

Toward the close of discovery, the plaintiffs were granted leave to file a third amended complaint. (J.A. 10.) The theories of relief remained the same, but additional allegations were inserted to suggest further wrongdoing by Marriott.

9

The third amended complaint alleged that Marriott exerted daily control over the Hotel and over the actions of the personnel on the ground in Pakistan.  Not only did the third amended complaint seek to hold Marriott liable for allegedly overseeing the Hotel's daily operations, ████████████████████████████████████

████████████████████████████████████████████████

(J.A. 198–99, 202–03.)  In essence, plaintiffs sought to shoehorn into this case the theory of liability that they had disavowed when fighting to keep this case in the District of Maryland: that is, that plaintiffs should be able to recover for acts and omissions that took place in Pakistan.

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████

## D.    The Summary Judgment Proceedings and the District Court's Decision

Following full discovery, Marriott filed a motion for summary judgment on all claims asserted in the third amended complaint. (J.A. 145–190.) Marriott argued, among other things, that, because Marriott did not control the Hotel's security operations—since the Hotel is owned, operated, and managed by an entirely separate and independent Pakistani company—Marriott could not be liable for any alleged inadequacies concerning how the Hotel responded to the terrorist attack. Plaintiffs opposed the summary judgment motion (J.A. 389–427), and Marriott filed a reply brief (J.A. 1640–75.) Oral argument was held on December 1, 2014. (J.A. 13–89.)

The parties briefed the summary judgment motion primarily under Maryland law. The district court, before deciding the motion, ordered the parties to submit supplemental briefing on Pakistani law, and in particular on the following question: "Under Pakistani law, under what circumstances can an individual maintain a cause of action against a franchisor injured on the premises of a franchisee that owns and operates the premises, whether based on negligence, agency, estoppel, or any other legal theory?" (J.A. 92–93.) Both parties

11

appeared to be in agreement that Pakistani law and applicable

Maryland law were analogous in all material respects—and that, under

either body of law, the answer ultimately turned on the issue of control.

(J.A. 100, 177.)

On September 18, 2015, the district court issued an order and

opinion granting Marriott summary judgment on all claims. (J.A. 122–

134.) The district court agreed with the parties that applicable

Maryland law was congruent with applicable Pakistani law. (J.A. 128–

29.) Examining the undisputed factual record, the district court

concluded that there was no factual basis for plaintiffs' contention that

Marriott "controlled all aspects of anti-terrorism security at the

Marriott Islamabad Hotel." (J.A. 123.) To the contrary, the district

court concluded that Marriott exercised no control whatsoever over the

Hotel's security operations or security staff. As the district court

explained: "discovery in this case has demonstrated that Marriott did

not propose, draft or implement a security plan for the Hotel, but rather

Hashwani wrote and implemented its own security plan for the Hotel

which addressed security strategies, threat scenarios, security layers,

security equipment and other security concerns specific to the

Islamabad Marriott Hotel." (J.A. 126.) The fact that the plain language of the Marriott–Hashwani franchise agreement disclaimed the existence of an agency relationship (J.A. 126) was supportive of, but by no means determinative of, this conclusion.

Following the district court's grant of summary judgment in Marriott's favor, plaintiffs appealed. (J.A. 12.)

## E.    The Factual Record

### 1.    The Franchisor-Franchisee Relationship.

There are three categories of hotels in Marriott's portfolio: owned, managed, and franchised. Owned hotels are owned and managed by Marriott. Managed hotels are owned by non-Marriott entities but are managed by Marriott, and are thus under Marriott's direct oversight. (J.A. 296:21-298:10.) By contrast, franchise hotels are neither owned, operated, nor managed by Marriott. (J.A. 882.) Rather, franchisees have oversight and control over their franchise hotels and "run their own operations." (J.A. 300:2-7.) Marriott oversees security for its owned and managed hotels, but not for franchise hotels. Discovery confirmed that Marriott does not create any security, training, or evacuation plans for franchise hotels. (J.A. 299:10–21, 300:2-7, 302:6-20.)

13

The Islamabad Marriott Hotel is a franchise hotel owned and operated by Hashwani, a public limited company organized and operating under the laws of Pakistan. (J.A. 882.) Franchisees "run their own operations." (J.A. 300:2-7.) Hashwani operated the Hotel pursuant to a franchise agreement that it entered into with Marriott Worldwide Corporation, a wholly-owned subsidiary of Marriott. (J.A. 882.)





### 2. The Hotel's Security Operations

At the outset of this case, plaintiffs conceded that they would be "hard pressed to prove liability" against Marriott if the evidence showed that Marriott did not exercise control over the Hotel's security operations. (Pls.' Opposition to Def.'s Mot. to Dismiss, ECF Doc. 70, at 8-9.) Plaintiffs made it clear that their case was not about alleged acts by those in Pakistan or the implementation actions of the Hotel owner or third parties. (J.A. 279:13-14 ["But it's the plan, not the implementation by the franchisee in Pakistan that we're focusing on."].)

15

Discovery confirmed there was no plan designed, created or implemented by Marriott. Discovery confirmed that Marriott did not exercise control over the Hotel's security operations and that Marriott did not hire or train the Hotel security personnel who responded to the attack. (J.A. 291:18-24, 292:9-12, 300:2-7, 299:10-21, 302:6-20, 319:2-24, 322:10-19, 323:6-10.) Hashwani, not Marriott, was responsible for interviewing and hiring security personnel to protect the Hotel. (J.A. 304:3-6, 327:11-16, 934.) Marriott's lack of control over security personnel and the security operations at the franchise Hotel was repeatedly confirmed during discovery.

16









In their brief, plaintiffs assert in conclusory terms that the Hotel's security operations were controlled by Marriott, but they do not point to any evidence in support of that assertion, despite having had the opportunity to take discovery from the Hotel's own personnel. In fact,

20

they offer not a shred of evidence from anyone at the Islamabad Hotel suggesting that any of their security measures or any actions or conduct by the local security or hotel staff were in any way influenced by an alleged Marriott-dictated security or crisis plan.





22



From these undisputed facts, it is evident that each franchise hotels, including the Islamabad Marriott Hotel, is responsible for creating, following, and implementing its own specific local crisis management plan.







26



### 6.    Statements by Alan Orlob

The plaintiffs contend that certain statements by Alan Orlob, a Marriott employee, show that Marriott exercised daily control over the Hotel's security operations. That contention grossly distorts Mr. Orlob's actual testimony.

27

First, plaintiffs invoke testimony Mr. Orlob gave to the U.S. Senate Committee on Homeland Security and Governmental Affairs on January 28, 2009, in an effort to suggest that Marriott drafted a security plan for the Hotel and exercised daily control over the Hotel. (Appellants' Br. at 11–12.)  Mr. Orlob's own words say no such thing.

Moreover, Mr. Orlob clarified that the purpose of his appearance before the Senate Committee was to discuss the November 26, 2008, terrorist attacks in Mumbai, India. (J.A. 369–70.)

28

[REDACTED]

Plaintiffs also rely on an article written by Mr. Orlob in 2009 for a security magazine called *The Guardian*. Plaintiffs try to use this article to "prove" that the Marriott exercised complete control over the Hotel's security operations. Nothing in the article remotely supports that contention.

[REDACTED]









## SUMMARY OF ARGUMENT

When a guest is injured at a franchise hotel, no liability attaches
to the franchisor where the franchisor exercised no control over the
specific instrumentality that caused the injury.

Here, the factual record demonstrates that the Islamabad
Marriott Hotel was owned, operated, and managed not by Marriott, but
rather by Hashwani, an independent Pakistani company. Hashwani
controlled its own security operations, and was responsible for
designing and implementing its own security plan. Accordingly,
Marriott owed no duty to Mr. DiFederico, nor did Marriott commit any
negligent act that caused Mr. DiFederico's death. The district court's
grant of summary judgment should therefore be affirmed on all counts.

Summary judgment on plaintiffs' survivorship claim was proper
for the additional reason that plaintiffs presented no evidence that Mr.
DiFederico experienced conscious pain before he died. On the contrary,
plaintiffs' own expert admitted that she was unable to make such a
determination.

34

Finally, plaintiffs' vicarious liability "claim" was properly dismissed not only because of the absence of any negligence on the part of Marriott or its employees, but also because vicarious liability is a theory of liability, not an independent cause of action.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the district court's award of summary judgment and views the facts in the light most favorable to the non-moving party. Summary judgment is appropriate only if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The relevant inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. To withstand a summary judgment motion, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial.... [This Court] will uphold the district court's grant of summary judgment unless a reasonable jury could return a verdict for the non-moving party on the evidence

35

presented." *Rogers v. Deane*, 594 F. App'x 768, 769 (4th Cir. 2014) (internal quotation marks and citations omitted).

"Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002).

"Additionally, [this Court] may affirm on any ground presented in the record, even if it was not the basis on which the district court relied in granting summary judgment." *Rogers v. Deane*, 594 F. App'x at 769 (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)).

## ARGUMENT

I.    **Summary judgment was properly granted on all counts because no reasonable fact-finder could conclude that Marriott committed a specific negligent act that caused Mr. DiFederico's death**

Plaintiffs asserted claims for wrongful death, survivorship, and vicarious liability, all based on the theory that alleged negligent actions of Marriott purportedly caused Mr. DiFederico to be killed in the September 20, 2008 terrorist attack.  (J.A. 202–05.)

To prevail on their claims—all of which sound in negligence—plaintiffs would have had to prove that Marriott owed a duty to Mr.

36

DiFederico, that Marriott negligently breached that duty, and that

Marriott's negligence caused Mr. DiFederico's death. *See, e.g., May v.*

*Giant Food, Inc.*, 712 A.2d 166, 171 (Md. Ct. Spec. App. 1998) (setting

forth the elements of a claim for negligence); *Weimer v. Hetrick*, 525

A.2d 643, 652 (Md. 1987) (setting forth the elements of Maryland's

Wrongful Death Statute, and noting that the statute is strictly

construed); *Tri-State Poultry Co-op. v. Carey*, 57 A.2d 812, 817 (Md.

1948); *DRD Pool Service, Inc. v. Freed*, 5 A.3d 45, 52 (Md. 2010)

(discussing the elements of a survivorship claim).

Moreover, plaintiffs would have had to prove that the causal

connection between the alleged negligent act and Mr. DiFederico's

death was not "a matter of conjecture" but rather "something more than

consistent with plaintiff[s'] theory as to how the accident occurred."

*Weimer*, 525 A.2d at 648.

The district court properly granted summary judgment for

Marriott because the undisputed factual record establishes that

Marriott, as a mere franchisor, owed no duty to Mr. DiFederico. That is

because Marriott did not control the Hotel's security operations or train

the Hotel's security staff. In fact, it exercised no control whatsoever

37

over the Hotel's day-to-day operations.  Even if Marriott had owed a

duty to Mr. DiFederico, Marriott did not commit a negligent act that

caused Mr. DiFederico's death, because it was not involved in

establishing the security procedures that the Hotel's security personnel

followed in connection with the attack.

## A.     Marriott owed no duty to Mr. DiFederico

Under Maryland law and the law of this Circuit, hotel franchisors

such as Marriott who do not control a franchise hotel's operations

generally owe no duty to guests who are injured on the franchise hotel's

premises.  *See, e.g., Choice Hotels Int'l v. Palm-Aire Oceanside*, No.  95-

2592, 1996 WL 494063, at *2 (4th Cir. Aug. 30, 1996) (applying Maryland

law and holding that franchisee bore the sole legal duty to its guests:

"While the franchise agreement entitled [franchisor] to inspect the

motel to preserve the reputation of its trademarks, it did not alter the

primary duty that [franchisee] owed to its guests.").  *See also, e.g.,*

*Schear v. Motel Mgmt.  Corp.  of Am.*, 487 A.2d 1240, 1248-49 (Md. Ct.

Spec. App. 1985) (finding no liability as a matter of law, although

franchisor required a standardized system among all of its hotels and

retained the right to inspect to ensure compliance with those

38

regulations); *B.P. Oil Corp. v. Mabe*, 370 A.2d 554, 558-59 (Md. 1977)

(finding no liability as a matter of law, although lessee-operator of a gas

station featured products suggested by gasoline company and

prominently displayed only gasoline company's marks); *Chevron,*

*U.S.A., Inc. v. Lesch*, 570 A.2d 840, 844 (Md. 1990) (holding

requirement that lessee-operator of gas station meet certain conditions

set forth by gasoline company and branded with gasoline company logo

and products insufficient to impose liability upon gasoline company as a

matter of law).[4]

---

[4] *See also, e.g., Case v. Holiday Inns, Inc.*, 851 F.2d 356, 1988 WL
70401, at *1–2 (4th Cir. 1988) (franchisor not liable for assault and
robbery of guest because franchisor did not exercise detailed control
over franchisee's daily operations); *Wu v. Dunkin' Donuts, Inc.*, 105 F.
Supp.2d 83, 85 (E.D.N.Y. 2000) (franchisor owed no duty to victim of
assault and rape even though franchisor voluntarily instituted a
company-wide program designed to increase security at franchised
locations); *Triplett v. Soleil Grp., Inc.*, 664 F. Supp. 2d 645, 650 (D.S.C.
2009) (franchisor owed no duty to plaintiff who contracted Legionnaires'
disease from the hotel whirlpool even though franchisor set forth
regulations regarding water depth, temperature, step heights and
tread, and conducted periodic quality assurance inspections); *Anderson
v. Turton Dev., Inc.*, 483 S.E.2d 597, 601 (Ga. Ct. App. 1997) (franchisor
owed no duty to plaintiff who tripped over handicapped parking ramp in
franchised hotel parking lot because although franchise regulations
required the construction of handicap parking ramps and even provided
a suggested design, the franchisee designed the ramp that caused the
injury); *Chelkova v. Southland Corp.*, 771 N.E.2d 1100, 1110–11 (Ill
App. Ct. 2002) (franchisor not liable for criminal assault on franchisee's

An exception may apply where the franchisor controls the specific instrumentality that causes injury to the guest or customer. *See B.P. Oil Corp. v. Mabe*, 370 A.2d 554, 558-59 (Md. 1977); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284, at *3; 2012 U.S. Dist. LEXIS 34105, at *7 (E.D. Pa. Mar. 13, 2012) (applying Maryland law). Plaintiffs' appeal is primarily based on the theory that this limited exception applies. They argue that Marriott controlled the specific instrumentality that allegedly caused Mr. DiFederico's injury, and thus owed (and breached) a duty to Mr. DiFederico.

---

premises even though franchisor distributed robbery prevention kit and paid for a security system); *Fitz v. Days Inns Worldwide, Inc.*, 147 S.W.3d 467, 474 (Tex. App. 2004) (franchisor not liable even though it promulgated safety standards for franchisees to follow); *Castro v. Brown's Chicken and Pasta, Inc.*, 732 N.E.2d 37, 45; 314 Ill.App.3d 542, 551–52 (Ill. App. 2000) (franchisor owed no duty to customers murdered at franchisee's premises where all security measures were promulgated by franchisee, and franchisee implemented security measures on its own); *Hart v. Marriott Int'l, Inc.*, 758 N.Y.S.2d 435, 438 (App. Div. 2003) (franchisor not liable for slip and fall injury where franchisor had no control over the manner of performing the work in the course of which the accident occurred); *Allen v. Choice Hotels Int'l*, 942 So. 2d 817, 827 (Miss. Ct. App. 2006) ("[T]he majority of courts do not consider the rules and regulations, which are part of the franchise agreement, as a measure of direction and control. Instead, the courts find that these very specific and strict rules are a way for the franchisor to protect its trademark and to protect the public.").

This theory fails because, as discovery confirmed, Marriott neither operated the Hotel nor controlled the instrumentality at the Hotel that allegedly caused Mr. DiFederico's injury—that is, the allegedly deficient security plan, and the allegedly deficient security personnel. The Hotel was managed and operated not by Marriott, but by Hashwani.

The only evidence that plaintiffs attempt to offer to the contrary fails on its face. Alan Orlob's testimony at the United Senate did not in any way suggest that Marriott controls the day-to-day operations of its franchisees, much less the specific instrumentality that is at the heart of plaintiffs' case.

41

In short, Marriott did not control the instrumentality that allegedly caused Mr. DiFederico's death, and thus owed no duty to Mr. DiFederico.

*    *    *

This Court's decision in *Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339 (4th Cir. 2008) is instructive. In *Allen*, this Court affirmed summary judgment in favor of a hotel franchisor, holding that the franchisor owed no duty to the franchisee's guests. The case arose from a fire that broke out at the Comfort Inn, killing or injuring a number of hotel guests. *Id.* at 340. The plaintiffs had argued that the franchisor owed a duty to the guests because the franchise agreement required the franchisee to have certain delineated fire safety precautions in place. 276 F. App'x at 342–44.

This Court disagreed. First, it reviewed the terms of the franchise agreement and the accompanying rules and regulations requiring the franchisee to have life-safety systems. *Id.* at 342. This Court found that there could be no duty under this franchise-liability theory because discovery had revealed that the franchisor had "not participate[d] in the selection of fire or safety equipment installed at the hotel, and that

42

[franchisee] did not need [franchisor's] approval to make any changes to safety and security systems at the hotel; nor did [franchisor] have a role in [franchisee's] decision regarding whether or not to install fire sprinklers." *Id.* at 343.

The same is true here: Marriott did not participate in the selection or creation of a security plan, or in the selection or training of Hotel security. Rather, it was the *franchisee* that was responsible for creating and implementing *its own* local crisis management plan. Marriott played no role in hotel security beyond requiring that the Hotel have a local crisis management plan in place, nor did it interview, hire, train, or have any control over Hotel security personnel.

Plaintiffs make much of the decision in *Bartholomew v. Burger King Corp.*, No. 11-00613, 2014 WL 1414975 (D. Haw. Apr. 14, 2014), but that decision actually supports Marriott's position. The *Bartholemew* Court held that a franchisor could be liable to a customer of the franchisee who bit into a burger imbedded with needles. The basis for the court's holding was that the franchisor had created, and imposed on the franchisee, strict and highly-detailed food-handling procedures, and controlled which brand and types of products the

43

franchisee could purchase. Here, by contrast, it was the franchisee
(Hashwani) who was responsible for the details of the alleged
instrumentality of the harm: that is, the Hotel's security plan and
security operations.

The decision in *Toppel v. Marriott Int'l, Inc.*, No. 03-civ-3042, 2008
WL 2854302 (S.D.N.Y. July 22, 2008) is likewise easily distinguishable,
and for the same reason. The *Toppel* Court found that the
instrumentality of the harm—the placement of signage at the top of a
poorly-lit stairwell—had been specifically mandated by the franchisor.
*Id.* at *9. Here, by contrast, Marriott did not design, implement, or
control the security measures that were in effect at the Hotel on the
night of September 20, 2008.

*     *     *

44

See *Temple*, 2012 WL 848284, at *4; 2012 U.S. Dist. LEXIS 34105, at *10 ("[D]efendant's desire to ensure that business is conducted in a manner uniform with all other [franchisees]" did not mean that franchisor exerted control or that franchisee was exempt from its responsibilities).

45



\*    \*    \*

Under well-established law and in light of the evidence developed during discovery, Marriott owed no duty to DiFederico. Any duty owed to Mr. DiFederico was owed by Hashwani, whom plaintiffs elected not to sue.

For this reason alone, the district court properly granted summary judgment to Marriott on all three claims, each of which sounded in negligence.

### B. Marriott did not commit a negligent act that caused Mr. DiFederico's death

Even if this Court were to find that Marriott owed a duty to a guest of a non-Marriott-owned, non-Marriott-managed franchise hotel, there is no evidence that a specific act or omission by Marriott caused Mr. DiFederico's death. To defeat summary judgment, plaintiffs needed to show "a reasonable connection between ... Defendant's ... negligence and ... Plaintiff's injuries" resulting in death. *Osunde v. Lewis*, 281 F.R.D. 250, 260 (D. Md. 2012). A reasonable connection sufficient to establish proximate cause exists "'where there is a complete continuance and unbroken sequence between the act complained of and

47

the act finally resulting in the [death], so that one may be regarded by persons of ordinary judgment as the logical and probable cause' of the injury." *Id.* (citation omitted).  In short, plaintiffs needed to show evidence of Marriott's negligent conduct, as well as evidence that the conduct "actually produced" Mr. DiFederico's death.  Plaintiffs were unable to adduce a shred of evidence in support of such a theory.



The causal connection asserted by the plaintiffs in this case rests on a "progression of assumptions" that does not ultimately result in proximate cause. *Hurley v. United States*, 923 F.2d 1091, 1096 (4th Cir. 1991). Moreover, as Maryland courts have explained, "there is no liability if a third party's actions, or the plaintiff's own actions, constitute an intervening, superseding force that interrupts the chain of causation." *Washington Metro. Area Transit Auth. v. Reading*, 674 A.2d 44, 52 (Md. 1996). Third-party Hashwani's actions in creating and implementing a local security plan for the Hotel supersede any hypothetical breach by Marriott, and Hashwani's training of its own employees also supersedes any hypothetical breach by Marriott.

## II.     Summary judgment was properly granted on the survivorship claim for the additional reason that there is no evidence that Mr. DiFrederico suffered any pain

The district court properly granted summary judgment on the survivorship claim because, as shown above, plaintiffs were unable to

49

demonstrate the existence of a duty on Marriott's part, let alone a
negligent action on Marriott's part that caused Mr. DiFederico's death.

Summary judgment was granted on the survivorship claim for an
additional, independently dispositive reason: the absence of evidence
that Mr. DiFederico suffered conscious pain, which is one of the
elements of a survivorship action. *See Jones v. Flood*, 702 A.2d 440, 442
(Md. Ct. Spec. App. 1997); *Tri-State Poultry Co-op.*, 57 A.2d at 817;
*DRD Pool Service, Inc.*, 5 A.3d at 45.

Two experts—including plaintiffs' own—separately concluded that
there was no evidence Mr. DiFederico experienced any conscious pain
and suffering. First, Marriott's expert concluded: "There is no evidence
that Mr. DiFederico was conscious following the blast injuries, and thus
no evidence that he experienced any conscious pain and suffering."
(J.A. 379.)

Second, plaintiffs' own pathology expert admitted she also lacked
any evidence of conscious pain and suffering: "I am currently unable to
come to a conclusion within reasonable medical certainty regarding
conscious pain and suffering." (J.A. 384.)

50

This is the only evidence in the record on this issue. Accordingly, there is no issue of material fact, and summary judgment on the survivorship claim was proper for this reason alone.

## III. Summary judgment was properly granted on the plaintiffs' vicarious liability "claim"

Plaintiffs' vicarious liability" claim was properly dismissed because vicarious liability "is, of course, not an independent cause of action, but rather a *theory* of assigning liability." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011) (emphasis supplied) (applying Maryland law and dismissing vicarious liability count of amended complaint at summary judgment).

Even considered on its own terms, the vicarious liability theory fails. Plaintiffs contend that Marriott should be vicariously liable for the alleged negligence of its "corporate security personnel" insofar as they "designed and controlled all aspects of anti-terrorism security at the Islamabad Marriott Hotel and implemented all procedures to be followed in response to a terrorist attack." (J.A. 205 ¶¶ 53–54, 56.)

As shown above, however, Marriott's "corporate security personnel" did not design or control any aspect of security at the

51

Islamabad Marriott Hotel and did not design or implement any procedures to be followed in response to a terrorist attack. This is because the only security personnel responsible for any procedures at the Hotel were those hired by *Hashwani*, not Marriott. Accordingly, plaintiffs' vicarious liability "claim" was properly dismissed.

## CONCLUSION

For the reasons above, the district court properly granted summary judgment in Marriott's favor on all claims. The district court's decision should be affirmed.

Respectfully submitted,
COZEN O'CONNOR

s/ Paul K. Leary, Jr.
Paul K. Leary, Jr.
1627 I Street, N.W., Suite 1100
Washington, DC 20006-4007
Telephone: (202) 912-4800
Facsimile: (202) 912-4830
pleary@cozen.com
*Counsel for Defendant-Appellee*

52

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FRAP 28.1(e)(2) or 32(a)(7)(B) because this brief contains 9,674 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14pt Century Schoolbook.

Dated:     February 22, 2016          s/ Paul K. Leary, Jr.
                                      Counsel for appellee

53

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on the 22th day of February 2016, I caused this brief to be filed electronically with the Clerk of the Court, using the CM/ECF System, which will send notice of such filing on all counsel of record. I also certify that, by overnight mail, I am on this day causing the required paper copies of the Sealed Brief to be filed with the Court and served on counsel for plaintiffs.

Dated:     February 22, 2016                    s/ Paul K. Leary, Jr.
                                                 Counsel for appellee